UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CLEASE ALLEN, MARY ALTONEN, AND IGOR
SIDORKIN, *on behalf of themselves and all others
similarly situated*,

               Plaintiffs,

     - against -

ADVANCED CALL CENTER TECHNOLOGIES,
L.L.C.,

               Defendant.
-------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
18-CV-2873 (RRM) (AYS)

ROSLYNN R. MAUSKOPF, United States District Judge.

Plaintiffs Clease Allen, Mary Altonen, and Igor Sidorkin (collectively, "Plaintiffs") bring

this action on behalf of themselves and a putative class against defendant Advanced Call Center

Technologies, L.L.C. ("ACT"), a debt collector, alleging violations of the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* ACT now moves to dismiss for failure to

state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons stated

below, ACT's motion is granted.

**BACKGROUND**[1]

On May 10, 2017, May 15, 2017, and February 19, 2018, ACT mailed a collection letter

to each of the Plaintiffs. (*See* Ex. 1 to Compl. (Doc. No. 1-1).) The letters concerned allegedly

past due debts incurred on credit cards underwritten by Synchrony Bank. (Compl. (Doc. No. 1)

at ¶¶ 24–26.) The letters sent to Plaintiffs were substantively the same; the only differences were

---

[1] The following facts are drawn from the complaint, (Doc. No. 1), and the collection notice attached to the
complaint, (Ex. 1 to Compl. (Doc. No. 1-1)), unless otherwise noted. *See Chambers v. Time Warner Inc.*, 282 F.3d
147, 152 (2d Cir. 2002) (finding that, for purposes of a motion to dismiss, the court may consider a "written
instrument attached to [the complaint] as an exhibit" (internal quotation marks omitted) (citation omitted)). The
Court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all
reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers*,
282 F.3d at 152).

the recipients' names, addresses, and account information. At the top of each letter, the

consumer's account number is listed. Below the account number is the "TOTAL ACCOUNT

BALANCE," and directly below that is the "AMOUNT NOW DUE." The subject line states the

name of the relevant credit card, such as "JCPenney Credit Card Account." The body of the

letters begins, "This account has been listed with our office for collection. This notice has been

sent by a collection agency. This is an attempt to collect a debt, and any information obtained

will be used for that purpose." The letters continue:

> If the Amount Now Due is paid to Synchrony Bank and your account is brought up to date, we will stop our collection activity. All payments should be made directly to Synchrony Bank using the enclosed envelope. Do not send payments to this office. …
>
> Synchrony Bank may continue to add interest and fees as provided in your agreement. If you pay the balance shown above, an additional payment may be necessary to pay your account balance in full. Because of interest, later charges, credits or charges that may vary from day to day, the amount due on the day you pay may differ. For further information call 844-458-3450.

The last paragraph contains the validation notice, which states: "Unless you notify this office

within 30 days after receiving this notice that you dispute the validity of the debt or any portion

thereof, this office will assume the debt is valid." The paragraph continues with a description of

the procedures that follow if the consumer requests validation of the debt, including that the

collector will "obtain verification of the debt or obtain a copy of a judgment . . . ."

On May 14, 2018, Plaintiffs filed the instant complaint, asserting four causes of action.

First, they claim that ACT's letters do not provide the requisite information to allow the least

sophisticated consumer to determine the amount they must pay to resolve their debts "at any

given moment in the future," in violation of 15 U.S.C. §§ 1692g and 1692e. (Compl. at ¶¶ 31–

32.) Plaintiffs present a litany of reasons why the letters do not clearly state the amount of debt,

including that the letters fail to indicate the amount of interest, the interest rate, the date of the

accrual of interest, the amount of interest during any measurable period, or the amount attributable to principal, interest, late fees, and other fees. (*Id*. at ¶¶ 33–36, 38–41.) Plaintiffs also allege that the letters lack "an explanation, understandable by the least sophisticated consumer, of any fees and interest that may cause the stated amount to increase." (*Id*. at ¶ 37.) They emphasize that ACT's use of the word "*may*" – for example, the statement that Synchrony Bank "may continue to add interest and fees" – renders the consumer "unable to determine the amount of her debt," as she would not know "whether the amount of the debt was static," or whether interest and fees were actually accruing. (*Id*. at ¶ 45 (emphasis added).) Additionally, Plaintiffs highlight that the letters fail to provide a "specified date" by which "the creditor will accept payment of the amount set forth in full satisfaction of the debt." (*Id*. at ¶ 42.)

In the second cause of action, Plaintiffs claim that ACT violated § 1692g because the statutorily-mandated validation notice is overshadowed by other statements in the letters. (*Id*. at ¶ 62.) Plaintiffs highlight the following statement as overshadowing: "If the Amount Currently Due is paid to Synchrony Bank and your account is brought up to date, we will stop our collection activity." (*Id*. at ¶¶ 61, 62.) This statement, Plaintiffs argue, could mislead the consumer into thinking that "the only way" to stop collection efforts is "to remit payment, contrary to law." (*Id*. at ¶ 68.) They contend that the validation notice setting forth the consumer's right to dispute her debt is overshadowed by that confusing statement, and that the least sophisticated consumer would likely be uncertain as to her rights. (*Id*. at ¶¶ 62, 63, 66, 67, 69.)

In the third cause of action, Plaintiffs again challenge the validation notice, this time on the grounds that the "manner in which Defendant's letters are formatted would likely make the least sophisticated consumer confused as to her rights" in violation of § 1692g. (*Id*. at ¶ 79.)

Plaintiffs object to the placement of the validation notice in the sixth paragraph, asserting that the rest of the letter overshadows the notice and may cause the reader to "overlook" her rights. (*Id.* at ¶¶ 75, 80.) They assert that the notice is "visually inconspicuous," as the Total Account Balance and Amount Now Due are represented at the top and bottom of each letter "in all capital letters" and "in a much larger typeface than the body of the Letter." (*Id.* at ¶¶ 73–76.) Plaintiffs further challenge the absence of "any kind of transitionary language, such as 'See Important Notice Below,'" which would direct the reader's attention to the validation notice. (*Id.* at ¶ 77.)

Lastly, Plaintiffs allege that ACT violated § 1692e because its letters could be interpreted in two different ways, one of which is inaccurate, and thus the letters are false or deceptive. (*Id.* at ¶ 85.) They contend that while a consumer could read the letter to say that collection efforts will stop upon her request for validation, the letter could also "be reasonably, but inaccurately, interpreted . . . to mean that the only way to make Defendant stop its collection efforts is to remit payment." (*Id.* at ¶¶ 87, 88.) Therefore, they allege, the least sophisticated consumer "would likely be deceived" by this "misleading representation." (*Id.* at ¶¶ 90–92.)

ACT moves to dismiss the complaint on the grounds that the letters properly notify the consumers of their account balances and adequately advise them that the balances are subject to increase in a way that is not misleading. (Def.'s Mem. Of Law (Doc 11-3) at 4–5.) ACT also argues that the validation notice is clear, and that nothing about the formatting of their letters makes the notice false or misleading. (Def.'s Reply (Doc. No. 13) at 7–8.)

**STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) requires a court to evaluate the legal rather than the factual sufficiency of a complaint. "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above

the speculative level.'" *Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Detailed facts are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires" the court to "draw on its judicial experience and common sense." *Id.*

## DISCUSSION

Congress enacted the FDCPA to respond to the "use of abusive, deceptive, and unfair debt collection practices by many debt collectors," 15 U.S.C. § 1692(a), and to "protect consumers against debt collection abuses." 15 U.S.C. § 1692e; *see also Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 437 (2d Cir. 2018) (quoting § 1692e). Courts interpreting the FDCPA read the statute in light of this legislative purpose. *See Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016); *see also Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 95 (2d Cir. 2008).

Section 1692g requires a debt collector to include certain disclosures in its initial communication with a consumer, including "the amount of the debt." 15 U.S.C. § 1692g(a)(1). Within five days of its initial communication with the debtor, a debt collector must also notify

the consumer of her right to dispute or obtain verification of the debt within 30 days of receiving the collection letter. *Id.* The disclosure of this right is often referred to as a "validation notice." When a consumer disputes a debt or requests verification of a debt, 1692g(b) mandates that the debt collector "shall cease collection of the debt . . . until the debt collector obtains verification of the debt or a copy of a judgment." *Id.* at § 1692g(b).

Section 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* at § 1692e; *see also Kolbasyuk v. Capital Mgmt. Servs., LP*, 17-CV-7499 (BMC), 2018 WL 1785489, at *1 (E.D.N.Y. Mar. 14, 2018) (noting that Section 1692e "operates as a backstop" to ensure that a collection notice is not misleading (internal quotation marks omitted) (citation omitted)), *aff'd*, 918 F.3d 236 (2d Cir. 2019). A collection letter is considered deceptive if it is "open to more than one reasonable interpretation, at least one of which is inaccurate." *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993). However, the FDCPA "does not aid plaintiffs whose claims are based on 'bizarre or idiosyncratic interpretations of collection notices.'" *Jacobson*, 516 F.3d at 90 (quoting *Clomon, 988 F.2d at 1320*). While a collection letter may satisfy § 1692g, this does not guarantee satisfaction with § 1692e. *See Avila*, 817 F.3d at 76.

In evaluating FDCPA claims, "courts apply an objective test based on the understanding of the 'least sophisticated consumer.'" *Hogan v. Nat'l Enter. Sys., Inc.*, 18-CV-2267 (JFB) (GRB), 2019 WL 1253393, at *3 (E.D.N.Y. Mar. 9, 2019) (citation omitted). Courts ask how a person without the "sophistication of the average, everyday, common consumer . . . would understand the collection notice." *Taylor v. Fin. Recovery Servs., Inc.*, 886 F.3d 212, 214 (2d Cir. 2018). The "least sophisticated consumer" is "uninformed, naïve, or trusting," but makes "logical deductions and inferences." *Dewees v. Legal Servicing*, 506 F. Supp. 2d 128, 132

(E.D.N.Y. 2007) (internal quotation marks omitted) (citation omitted). The law aims to shield

the vulnerable, while also "preserv[ing] the concept of reasonableness." *Goldstein v. Diversified*

*Adjustment Serv., Inc.*, No. 17-CV-4729 (BMC), 2017 WL 5592683, at \*2 (E.D.N.Y. Nov. 20,

2017) (quoting *Clomon*, 988 F.2d at 1319); *see also Jacobson*, 516 F.3d at 90 (noting that the

standard aims to "protect the gullible as well as the shrewd" (citation omitted)). The standard of

the least sophisticated consumer is applied with an eye toward the FDCPA's "dual purpose: in

addition to protecting consumers against deceptive debt collection practices, the objective test we

apply protects debt collectors from unreasonable constructions of their communications."

*Jacobson*, 516 F.3d at 90 (internal quotation marks omitted) (citation omitted).

Courts read collection letters as a whole. *See Goldstein*, 2017 WL 5592683, at \*2

(observing that "debt collection letters should be analyzed in their entirety" (citation omitted));

*see also McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 191 (2d Cir. 2002) (notice on the back of a letter

sufficed because "a reasonable reader, even if unsophisticated" would read both sides where a

"prominent instruction . . . warns that there is important information" on the back); *Clomon*, 988

F.2d at 1319 ("[E]ven the 'least sophisticated consumer' can be presumed to possess . . . a

willingness to read a collection notice with some care."). In sum, the central inquiry is whether a

consumer, after reading a collection letter in its entirety, is left "uncertain as to her rights."

*Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998).

The central issue before the Court is whether ACT's collection letters adequately set forth

the amount of the debt owed, clearly notified consumers of their rights under § 1692g, and did so

in a manner that was not "false, deceptive, or misleading" under § 1692e. The Court finds that

the letters complied with both of these statutory provisions because they sufficiently indicated

that the amount of debt could increase over time, clearly laid out the debtors' rights, and were not deceptive or misleading.

## I.      The Amount of the Debt

ACT argues that its letters comply with §§ 1692g and 1692e because they satisfy the requirements set forth in *Avila*, namely to notify a debtor of her account balance and "to disclose that the balance may increase due to interest and fees." 817 F.3d at 76. Plaintiffs claim that the letters violate the FDCPA because they fail to disclose certain details about the debt, such as the interest rate, thereby failing to provide the necessary information for Plaintiffs to determine the amount due at any given moment. (Compl. at ¶¶ 34–36.)

Plaintiffs are mistaken about the information a debt collector is required to disclose under the FDCPA. In *Avila*, the Second Circuit evaluated two letters that stated each debtor's "'current balance,' but did not disclose [that the] balance was continuing to accrue interest or that, if Plaintiffs failed to pay the debt within a certain amount of time, they would be charged a late fee." 817 F.3d at 74. The Court determined that the letters were misleading because debtors could believe that if they paid the listed balance, their debt would be satisfied in full, when in reality, the debts were accruing interest. *Avila* held that "the FDCPA requires debt collectors, when they notify consumers of their account balance, to disclose that the balance may increase due to interest and fees." *Id.* at 76.

In so holding, the Second Circuit adopted a "safe harbor" formula, originally laid out by the Seventh Circuit in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000). The "safe harbor" language adopted by the Court in *Avila* is as follows:

> As of the date of this letter, you owe $____ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day

8

you pay may be greater. Hence, if you pay the amount shown above, an adjustment may
be necessary after we receive your check, in which event we will inform you before
depositing the check for collection. For further information, write the undersigned or call
1–800–[phone number].

*Avila*, 817 F.3d. at 77.

The Second Circuit reaffirmed this safe harbor language in *Kolbasyuk*, and also stated

that "a failure to provide . . . additional detailed disclosures . . . does not transform [an]

otherwise-straightforward letter into a false, deceptive, or misleading one." *Kolbasyuk v. Capital*

*Mgmt. Servs., LP*, 918 F.3d 236, 242 (2d Cir. 2019) (internal quotation marks omitted) (citation

omitted); *see also Hogan*, 2019 WL 1253393, at *5. The Circuit held that a collection letter

"that informs the consumer of the total, present quantity" of her debt "satisfies § 1692g,

notwithstanding its failure to inform the consumer of the debt's constituent components or the

precise rates by which it might later increase." *Kolbasyuk*, 918 F.3d at 241.

Here, ACT's letters contain disclosures that closely track the safe harbor language.

While ACT does not use "the exact 'safe harbor' language identified in *Avila*," its disclosures are

"consistent with *Avila*'s holding that debt collectors need to 'disclose that [Plaintiff's] balance

may increase due to interest and fees.'" *Shevchuk v. Advanced Call Ctr. Techs., LLC*, No. 18-

CV-0894 (PKC) (JO), 2019 WL 1441129, at *3 (E.D.N.Y. Apr. 1, 2019) (citation omitted); *see*

*also Avila*, 817 F.3d at 77 ("[W]e do not hold that a debt collector must use any particular

disclaimer."). In *Shevchuk*, a plaintiff brought claims against ACT based on the same exact letter

that is at issue here. In concluding that the letter satisfied §§ 1692e and 1692g, Judge Chen

found that ACT's disclosure that "Synchrony Bank *may continue* to add interest and fees," is

consistent with *Avila* and satisfied "the standard articulated in *Kolbasyuk*, thus relieving

Defendant of any additional obligation to inform the consumer about how the amount might

increase in the future." *Shevchuk*, 2019 WL 1441129, at *2–3 & n.3. This Court agrees with

Judge Chen's conclusion. The individual detailed disclosures demanded by Plaintiffs are simply

not mandated by the FDCPA; the advanced warning that the amount of the debt might change in

the future is "all the FDCPA requires." *Taubenfliegel v. EGS Fin. Care, Inc.*, No. 18-CV-1962

(ARR) (JO), 2018 WL 3079697, at *4 (E.D.N.Y. June 21, 2018), *aff'd*, 764 F. App'x 76 (2d Cir.

2019).

Plaintiffs rely on *Carlin v. Davidson Fink LLP*, 852 F.3d 207 (2d Cir. 2017), to advocate

for stricter disclosure requirements, but *Carlin* does not control this case. Distinct from the

letters at issue here, the Payoff Statement in *Carlin* listed a "Total Amount Due" that was an

estimate of an anticipated payment at a future date. The Payoff Statement indicated that "the

Total Amount Due may include estimated fees, costs, additional payments, and/or escrow

disbursements that will become due prior to the 'Statement Void After' date, but which are not

yet due as of the date this Payoff Statement is issued." *Carlin*, 852 F.3d at 211. Accordingly,

the Payoff Statement provided an estimated, prospective amount "that Carlin *might* owe, rather

than the total, present amount that Carlin *did* owe," thus violating § 1692g. *Kolbasyuk*, 918 F.3d

at 241. However, here, distinct from *Carlin*, ACT's letters do not present prospective costs;

rather, they clearly (and in all capital letters) stated the "TOTAL ACCOUNT BALANCE" and

the "AMOUNT *NOW* DUE." (Ex. 1 to Compl. (emphasis added).) *Carlin* does not govern cases

where, as here, the debt collector discloses the *actual* amount of debt due at the time of notice,

rather than a mere estimate. *See Hogan*, 2019 WL 1253393, at *5 ("[T]he mandates of *Carlin*

are inapplicable where . . . [the debt collector] has utilized the safe harbor language and clearly

presented the current amount due."). Plaintiffs' argument that courts mistakenly cabin the

holding of *Carlin* to cases involving mortgage foreclosures is a mischaracterization of why

judges do not rely on *Carlin* as frequently as Plaintiffs would hope. *Carlin* is inapplicable in

many cases because the information disclosed in the letters at issue, not the type of debt, is

distinguishable. Where, "as here, the debt collector has *already* informed the consumer of the

'minimum amount she owes at the time of the notice,' *Carlin* simply lacks relevance."

*Kolbasyuk*, 918 F.3d at 241 (citation omitted).

Plaintiffs' suggestion that *Taylor v. Financial Recovery Services, Inc.*, 886 F.3d 212 (2d

Cir. 2018), supports a broader interpretation of *Carlin* is unavailing. As Judge Chen explained in

*Shevchuk*, *Taylor* cited to *Carlin* "to explain the relationship between § 1692(g) and § 1692(e),"

not "for the proposition that debt collectors must provide more specific information about how a

debt might increase in the future in order to avoid liability under the FDCPA." *Shevchuk*, 2019

WL 1441129, at *4 (citations omitted); *see also Taubenfliegel*, 2018 WL 3079697, at *4

(observing that *Taylor* "expressly rejected a requirement of exhaustive disclosures" by

"approving a collection notice that was silent as to whether a debt is accruing interest").

Plaintiffs also contend that ACT's "use of the word 'may,' as it appears in the [letters],

would render the least sophisticated consumer unable to determine the amount of her debt

because the consumer would not know whether interest and fees would continue to accrue, or

whether the amount of the debt was static." (Compl. at ¶ 45.) This argument is also untenable,

as the language in ACT's letters closely tracks *Avila* and therefore qualifies for safe harbor

treatment. *See Timoshenko v. Mullooly, Jeffrey, Rooney & Flynn, LLP*, No. 17-CV-4472 (ILG),

2018 WL 1582220, at *3 (E.D.N.Y. Mar. 30, 2018) (rejecting the argument that a letter did not

qualify for safe harbor treatment because it stated that amount of debt "may" increase, rather

than "will" increase). While not a guarantee of immunity, use of the *Avila* safe harbor language

protects a debt collector from a Section 1692e claim based on "an alleged 'fail[ure] to disclose

that the consumer's balance may increase due to interest and fees.'" *Kolbasyuk*, 918 F.3d at 242

(quoting *Avila*, 817 F.3d at 77).

The Court concludes that ACT's letters comply with §§ 1692g and 1692e by clearly

identifying the "total, present quantity" of debt due at the time the letters were sent and further

indicating that the amounts may increase due to interest and fees. *See Kolbasyuk*, 918 F.3d at

241; *see also Avila*, 817 F.3d at 77.

## II.     The Validation Notice

### a.  The Language of the Notice

In the second cause of action, Plaintiffs argue that ACT's validation notice fails to

comply with § 1692g because it misleads the least sophisticated consumer "into believing that

the only way to make Defendant stop its collection efforts is to remit payment . . . ." (Compl. at

¶ 68.) ACT argues that the notice is sufficient, as it clearly states the consumer's right to dispute

the debt. (Def.'s Reply at 7–8.)[2]

Debt collectors are obligated to convey a validation notice clearly. The Second Circuit

has repeatedly held that, "even if the collector includes an accurate validation notice, if that

notice is overshadowed or contradicted by other language in communications to the debtor," it

violates § 1692g(a). *Jacobson*, 516 F.3d at 90 (2d Cir. 2008) (citing, *inter alia*, *Savino*, 164 F.3d

at 85); *see also Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996). In determining whether

a validation notice is "overshadowing or contradictory," courts ask whether "it fails to convey

the validation information clearly and effectively and thereby makes the least sophisticated

consumer uncertain as to her rights." *Savino*, 164 F.3d at 85 (citation omitted).

---

[2] Despite Plaintiffs' contention that ACT has not presented arguments with respect to the overshadowing claim, (Pls.' Opp'n (Doc. No. 12) at 3 & n.1), ACT's memorandum of law in support of its motion to dismiss argues that the letters comply with the FDCPA, and ACT's reply brief explicitly addresses the overshadowing claim.

In *Russell*, a collection agency sent a letter that stated, "If you do not dispute this claim (see reverse side) and wish to pay it within the next 10 days we will not post this collection to your file." 74 F.3d at 32. On the reverse side, the letter contained a clear and accurate statement of the debtor's right to verify the debt. *See id.* The Second Circuit determined that the notice violated § 1692g as a matter of law because "the language on the front of the notice overshadowed and contradicted the language on the back of the notice, causing the validation notice to be ineffective . . . ." *Id.* at 35.

Similarly, in *Savino*, a debt collector sent a letter which stated that the creditor "insists on immediate payment or a valid reason" for "failure to make payment." 164 F.3d 81, 84. On the back of the letter was a notice advising the consumer of his right to dispute the debt. The Second Circuit concluded that the letter violated the FDCPA "because the language on the front of the notice, when read in conjunction with the statutory debt validation on the reverse side, would 'make the least sophisticated consumer uncertain as to her rights.'" *Id.* (quoting *Russell*, 74 F.3d at 35). The Court found that the insistence on immediate payment, without any explanation that such a demand did not override the consumer's right to verify the debt, overshadowed the validation notice in violation of § 1692g. *Id.* at 85–86.

Here, the validation notice in ACT's letters is not overshadowed. A plain reading of the letters reveals that the consumer may stop collection efforts in two independent ways: by paying the Amount Now Due, or by disputing the debt. There is no indication in the letters that paying the debt is the exclusive means to stop collection efforts. Further, there is no suggestion that ACT demands immediate payment by any date which would inhibit the consumer's right to contest her debt; in fact, Plaintiffs acknowledge that the letters do not provide a "specified date" by which "the creditor will accept payment . . . ." (Compl. at ¶ 42.) Thus, ACT's letters do not

resemble the level of confusion seen in *Russell* or *Savino*. Distinct from those cases, the notice

here is clearly written and located just three short paragraphs below the request for payment.

Here, "even the least sophisticated debtor would understand that she had the option to submit a

notice of dispute, rather than pay the claimed sum." *Jacobson*, 516 F.3d at 92. Given the clarity

of the language and the proximity of the notice to the remainder of important information in the

letter, the Court finds that the validation notice is not overshadowed in a way that leaves the least

sophisticated consumer uncertain as to her rights.

> b. *The Formatting of ACT's Letters*

In the third cause of action, Plaintiffs claim that the way in which ACT's letters "are

formatted" would cause the consumer to overlook her rights. (Compl. at ¶¶ 79–80.) The Court

assumes that even the least sophisticated consumer reviews a collection letter with care and reads

the letter in its entirety. *See Clomon*, 988 F.2d at 1319. Thus, assuming that the consumer reads

the letter in full, the placement of the validation notice in the sixth paragraph would not lead her

to overlook her rights. Distinct from the notices at issue in *Russell* and *Savino*, the validation

notice here is on the front page of the body the letter. As in *Jacobson*, the consumer's right to

seek validation of the debt is "explained, not on the back of the demand letter, but on its face,

below the initial statement, and in clear terms." 516 F.3d at 92.

Moreover, Plaintiffs have failed to provide any authority requiring debt collectors to

include "transitionary language." (Compl. at ¶ 77.) In *Savino*, the Second Circuit suggested that

the debtor "*could* have complied with the [FDCPA] simply by inserting into the text of its letter

transitional language that referred the addressee to the validation notice." 74 F.3d at 86

(emphasis added). However, the Circuit's suggestion was intended to cure a letter that insisted

on immediate payment; ACT's letters do not make an equivalent demand that overshadows the

validation notice. *Savino* did not impose a mandatory requirement of transitional language for every collection letter, and the Court declines to do so now. The absence of language explicitly directing the reader to the validation notice does not render a letter deficient as a matter of law. Indeed, nothing about the formatting of ACT's letter permits the Court to find that the validation notice is overshadowed in violation of § 1692g.

### III.     Competing Interpretations of ACT's Letters

Plaintiffs also maintain that ACT's letters are open to two interpretations, one of which is false. They argue that the letters could be interpreted to indicate that collection efforts will stop if the consumer disputes or requests validation of the debt, but that they could also "reasonably, but inaccurately, be interpreted . . . to mean that the only way" to stop collection efforts is to "remit payment." (Compl. at ¶ 87, 88.)

While a collection letter is deceptive if it is "open to more than one reasonable interpretation, at least one of which is inaccurate," *Clomon*, 988 F.2d at 1319, there is no uncertainty as to the message conveyed by ACT's letters. The letters describe two different actions consumers may take to stop collection efforts, but there is no language of exclusivity. Plaintiffs' contention that a reader could conclude that the *only* way to stop collection is to make a payment is inconsistent with the language of the letters. The letters explicitly state that the consumer may "notify" the debt collector within 30 days if she wishes to "obtain verification of the debt . . . ." (Ex. 1 to Compl.) Plaintiffs cannot reasonably claim that fulfilling ACT's request for payment was, absent language indicating otherwise, the only way to stop collection efforts. The least sophisticated consumer would not reasonably read ACT's letters in the way Plaintiffs suggest, and the Court need not accept their idiosyncratic interpretation. *See Jacobson*, 516 F.3d at 90. The letters are neither false nor misleading under § 1692e.

## CONCLUSION

For the foregoing reasons, ACT's motion to dismiss, (Doc. No. 11), is granted and all claims are dismissed with prejudice. The Clerk of Court is respectfully directed to enter judgment in favor of ACT and to close this case.

SO ORDERED.

Dated:  Brooklyn, New York
        September 30, 2019

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge